CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

JUN 25 2018

JULIA C. DUDLEY, CLERK
BY: s/ MARTHA L. HUPP
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, AND COMMONWEALTH OF VIRGINIA, *ex rel.* THOMAS GLASS, <br><br> *Relator,* <br><br> v. <br><br> HUGHES CENTER, LLC, <br><br> AND <br><br> UNIVERSAL HEALTH SERVICES, INC., <br><br> *Defendants.* | Civil Action No.:   4:18CV00037 <br><br> **Filed Under Seal Pursuant to 31 U.S.C. § 3730(b)(2)** <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

1.  Relator Thomas Glass ("Glass"), by counsel, brings this action on behalf of the United States of America, the Commonwealth of Virginia ("Commonwealth"), and himself under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, and the Virginia Fraud Against Taxpayers Act, Va. Code Ann. §§ 8.01-216.1, *et seq.*, against Defendants the Hughes Center, LLC, ("Hughes Center") and Universal Health Services ("UHS") to recover losses sustained by the United States Department of Health and Human Services ("HHS") Centers for Medicare and Medicaid Services ("CMS") and the Virginia Department of Medical Assistance Services ("DMAS" or "Virginia Medicaid") due to the Defendants' false claims to Medicaid and the creation of false records material to Medicaid claims for health services.

1

## I.     Introduction

2.     This action is brought by Relator Thomas Glass on behalf of the United States and the Commonwealth of Virginia to recover penalties and damages arising from the false claims for payment and related false records made by the defendants and/or caused to be made by the defendants. Defendant UHS, through its employees and subsidiary companies, submitted false claims to the United States and Commonwealth of Virginia in connection with juvenile mental health services at The Hughes Center by inflating its billing for mental health services, billing for patients/residents who were not even present at the facility, and violating program guidelines for the permissible billing of group sessions.

3.     Based upon what Glass learned from processing and observing the treatment records in his position as supervisor, the Hughes Center and UHS knowingly submitted false claims to Medicaid for mental health services and created false records material to false Medicare and Medicaid claims. These FCA violations are outlined in more detail below.

## II.     Jurisdiction and Venue

4.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 31 U.S.C. §§ 3732(a) and 3730(b). The Court has supplemental jurisdiction to entertain the claims made on behalf of the Commonwealth pursuant to 28 U.S.C. § 1367(a) and 31 U.S.C. § 3732(b).

5.     This Court has personal jurisdiction of the Defendants because the Defendants can all be found in and transact business in the Western District of Virginia.

6.     Venue is proper in this judicial district under 31 U.S.C. § 3732(a) because, at all times material and relevant hereto, the Defendants transacted business and resided in the Western District of Virginia.

29411/1/8219737v1

7.     Relator's claims in this Complaint are not based on allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the government is already a party, as enumerated in 31 U.S.C. § 3730(e)(3).

8.     To the extent that there has been a public disclosure unknown to the Relator, he is the "original source" and meets the requirements of § 3730(e)(4)(B) and Va. Code Ann. § 8.01-216.8. Relator has direct and independent knowledge of the information upon which the allegations are based, and has voluntarily provided this information to the government prior to filing this action under seal, as required by 31 U.S.C. § 3730(b)(2) and Va. Code Ann. § 8.01-216.8.

### III.    Parties and Other Key Players

9.     Relator Thomas Glass was a counselor and later a supervisor at the Hughes Center from 2008-2012.

10.     Defendant Hughes Center is a Virginia corporation with its principal place of business located at 1601 Franklin Turnpike in Danville, Virginia 24540. The Hughes Center is owned and operated by Universal Health Services, Inc. It is sometimes referred to as the Hughes Center for Exceptional Children.

11.     Defendant UHS owns and operates the Hughes Center. Its headquarters is located in King of Prussia, Pennsylvania. It provides health care services in the Commonwealth of Virginia.

12.     The Director of the Hughes Center during the relevant time period was Chris Shelton. Relator Thomas Glass reported to Director Chris Shelton as a supervisor.

3

## IV.    Legal Framework

13.    The FCA provides, in part, that any person who:

(a)(1)(A)    knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(a)(1)(B)    knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

[or]

(a)(1)(G)    knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government.

Is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, plus 3 times the amount of damages which the Government sustains because of the act of that person.

31  U.S.C. § 3729. For purposes of the FCA,

[T]he terms "knowing" and "knowingly"—(A) mean that a person, with respect to information—(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information; and (B) require no proof of specific intent to defraud

14.    Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 and 64 Fed. Reg. 47099 (1999), the FCA civil penalties were adjusted to $5,500 to $11,000 for violations occurring on or after September 29, 1999. The Federal Civil Penalties Adjustment Act Improvements Act of 2015 and its implementing regulations linked FCA civil penalties to inflation, and are currently set civil penalties between $11,181 to $22,363.

4

15.     The Virginia Fraud Against Taxpayers Act ("VFATA") provides, in part, that any person who:

> (A)(1) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (A)(2) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;
>
> [or]
>
> (A)(3) Conspires to commit a violation of subdivision 1, 2, 4, 5, 6, or 7:
>
> [s]hall be liable to the Commonwealth for a civil penalty of not less than $5,500 and not more than $11,000, plus three times the amount of damages sustained by the Commonwealth.

Va. Code Ann. § 8.01-216.3.

16.     The VFATA defines "knowing" and "knowingly" as meaning that "a person, with respect to information, (i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information" and requires no proof of specific intent to defraud.  Va. Code Ann. § 8.01-216.3(C).

## V.     Medicaid Reimbursement Protocol

17.     When hospitals and physicians render services and supplies to Medicare or Medicaid beneficiaries, Medicare or Medicaid, respectively, will reimburse the healthcare provider for those services and supplies, based on set rates.

18.     The Medicaid Program is a joint state-federal program that provides health benefits for particular groups, such as indigent and disabled individuals. The federal portion of each state's Medicaid payments is based on a state's per capita income. During all relevant times, the FMAP for the Commonwealth was approximately 50 percent.

29411/1/8219737v1

19.     Participating healthcare providers file claims for services or supplies rendered under the Medicare or Medicaid programs. When a healthcare provider files a reimbursement claim for services rendered, it fills out the 837P standard format electronic billing form or Form CMS-1500. The correct coding is key to submitting valid claims. The proper procedures and standards for providing residential mental health services are detailed in the Residential Treatment Services manual promulgated by Virginia DMAS.

20.     CMS maintains the Healthcare Common Procedure Coding System (HCPCS) and publishes coding tables quarterly, listing the codes used by health care providers to be reimbursed for services covered by Medicare and Medicaid. The Current Procedural Terminology ("CPT") code set is published by the AMA and included in the CMS tables. The CPT code books include guidance and instructions on which codes to use and when.

21.     Failure to use the correct coding results in inaccurate claims being submitted to Medicare or Medicaid. CMS warns that failure to use the correct coding can result in fraud or abuse charges under the False Claims Act and other applicable laws.

22.     The Hughes Center and UHS used the above described reimbursement and coding processes to submit false claims for payment to Medicaid.

23.     Submission of false claims to Medicaid necessarily results in false claims being submitted to Virginia Medicaid.

24.     The Virginia DMAS Residential Health Services manual also requires documentation be maintained for all services provided under the manual, and that failure to maintain such documentation on the part of service providers may result in recoupment of funds by Medicaid.

## VI.     The Hughes Center

25.     The Hughes Center is a residential mental health facility for juveniles.  The

children at the Hughes Center are frequently diagnosed with autism, Asperger's syndrome,

sexual aggression, physical aggression.  Many of the residents are there as a result of court order,

while others are there as a referral from their home school system.  Many of the residents are

from the Richmond, Tidewater, and North Carolina areas.  There are residents from as far away

as Florida.

26.     The Hughes Center can house a maximum of 50 residents, and it had no fewer

than 38 residents during my time there.

## VII.     The Hughes Center and UHS Falsified Billing Records

27.     Relator Thomas Glass began working at the Hughes Center in 2008.  He was

initially hired as a mental health counselor.  Glass' title later changed to mental health specialist.

28.     Around mid-2010, Glass was promoted to being the mental health residential

supervisor.  He served in this capacity until he left the Hughes Center in 2012.

29.     When Glass was promoted to be the mental health residential supervisor, he was

responsible for the campus at night until 8:00 a.m. each morning.  During the day, the director of

operations managed everything on the Hughes Center campus.

30.     Glass' duties were the day-to-day supervision of residents.  This included

reviewing and coordinating counseling schedules for the residents and reviewing and approving

their counseling records for billing purposes.

31.     Glass soon realized that there was an issue with the way that the residents were

being treated in group sessions.  Glass knew that there were supposed to be four group sessions

per day: two in the morning, and two in the afternoon.  There was also supposed to be a one-to-

7

four ratio of counselors to patients maintained at these sessions. Each patient/resident was to receive thirty minutes of individual attention per session. While there was an opportunity to "overlap" treatment during these sessions if patients/residents had the same diagnosis, this was not permitted if there were patients/residents in a given session with different diagnoses.

32.     Glass observed many instances of patients/residents with different diagnoses being lumped together in treatment groups that were not appropriate for treating their particular diagnosis, and that should not have been covered under the Medicaid regulations.

33.     Around 2010, Glass saw that many mental health counselors were reporting their time incorrectly. They were reporting sessions being completed with patients/residents who were not even on campus; in fact some were on weekend pass to visit their families and not even present on the campus.

34.     In his capacity as a supervisor, Glass was responsible for "signing off" on the completion of group sessions. This would involve approximately 200 signatures per day, which reflected 50 residents and four sessions per day. At the time, the Hughes Center was receiving $78.00 per group per patient.

35.     When Glass signed off on a session, this meant that the session for that particular patient/resident would be billed to Medicaid.

36.     The Director of the Hughes Center, Chris Shelton, instructed Glass that if patients/residents went on weekend passes, he was to add additional time to their sessions throughout the week to make up for this loss of revenue.

37.     Glass understood that other supervisors were similarly being directed to approve false treatment records for patients/residents.

8

38.     It was Glass' understanding from speaking with Chris Shelton that claims were being rejected by Medicaid, and so the counselors and supervisors were to submit duplicate billing for patients to ensure that at least a certain number would be paid.

39.     Around the holiday season of each year, many school districts and localities would send money for their patients/residents to allow them to make purchases for the upcoming year. These purchases usually included clothing and other basic necessities.

40.     Around November/December 2012, Chris Shelton asked Glass to take one of the patient/residents out for Christmas shopping. When Shelton went into his office to retrieve the money that the patient/resident's sending municipality had provided, however, he stated that the money was missing.

41.     Shelton told Glass that would "skim" a certain amount of money from the other patient/residents' money in order to make up for this shortfall. When Glass refused to participate in this scheme, Shelton retaliated against him.

42.     On several occasions in December 2012, Shelton directed Glass to report to a particular building on campus, and then informed him that he needed to stand in a particular location for the entire night. In Glass' previous work as a supervisor, he had never been directed to perform these types of duties, and his perception was that it was purely retaliatory and intended to either cause him to resign or give Shelton a basis for firing him if he refused.

43.     When Glass refused to comply with these retaliatory actions, the Hughes Center terminated his employment in December 2012.

## VIII.   Falsity

44.     The Hughes Center and UHS submitted false claims to the U.S. Government for payment and created false records material to false claims for payment in several ways.

9

45.     The Medicaid claim forms and accompanying billing records completed by the Hughes Center and/or UHS contain improper billing codes and incorrect billing units, used to seek a higher rate of reimbursement from Medicaid for services that the Defendants did not actually provide.

46.     The Medicaid claim forms contained false statements and/or constitute false records because they contain false coding or false time units in connection with requests for payment.

47.     The Hughes Center also created false treatment records to support their false claims for payment.

## IX.     Scienter

48.     Defendants the Hughes Center and UHS knew that the coding and time unit claims on the Medicaid claim forms were false in the following ways:

   a.   The Hughes Center, UHS, and its employees and agents knew that that the Medicaid claim forms and billing records contained false CPT codes;

   b.   The Hughes Center, UHS, and its employees and agents knew that the Medicaid claim forms and billing records contained multiple CPT codes when multiple services were not performed; and

49.     Relator Thomas Glass brought these issues to the attention of his supervisor Shelton on multiple occasions.

50.     Based upon the Defendants' specific knowledge outlined above with regards to the Hughes Center and/or UHS' improper coding and billing practices, the Hughes Center, UHS, and its employees and agents had actual knowledge, were deliberately ignorant, or recklessly

10

disregarded the truth in making false claims for payment to Medicaid or in creating false records material to false claims to Medicaid.

## X.      Materiality

51.     The false statements contained in the billing records and the Medicaid claim forms were capable of influencing Medicaid's funding decisions in the following ways:

    a.   A false code could influence the rate of Medicaid's reimbursement because the CPT codes are reimbursed at a set rate, determined by CMS; and

    b.   The false claim for reimbursement for multiple healthcare services, based on multiple codes, could influence the amount of Medicaid's reimbursement because multiple codes are allowed when proper and will be reimbursed at the set rate, so Medicaid relies on the healthcare provider's representations in order to pay out the proper reimbursement.

## XI.      Damages

52.     As a result of the knowing submission of false statements and the creation of false medical records, the Defendants induced Medicaid to pay out claims for mental health services that were not rendered or were coded at a heightened or inflated rate, thereby damaging Medicaid in an amount to be determined at trial.

## XII.     Causes of Action

### Count I:
### False Claims in Medicare and Medicaid PPS Claims; 31 U.S.C. § 3729(a)(1)(A)
### (Against All Defendants)

53.     Relator incorporates the foregoing paragraphs as if fully set forth in Count I.

54.     The United States and Relator Glass seek relief against Defendants under the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

11

55.     Defendants the Hughes Center and UHS submitted false claims for payment to CMS. These false claims for payment include, but are not limited to, the false coding and billing information in the CMS-1500 forms and/or electronic 837P forms submitted to Medicaid from 2010 to present.

56.     Defendants the Hughes Center and UHS knew that the claims were false when made in that they had actual knowledge that the claims were false, remained deliberately ignorant as to the falsity of the claims, or recklessly disregarded the falsity in the claims.

57.     The false statements contained in the false claims for payment were material because they could influence Medicaid's funding decision.

58.     By reason of the false or fraudulent claims, the United States has sustained damages in a substantial amount to be determined at trial, and is entitled to treble damages plus civil penalties for each violation.

**Count II:**
**False Records Material to Medicare and Medicaid PPS Claims; 31 U.S.C. §**
**3729(a)(1)(B)**
**(Against All Defendants)**

59.     Relator incorporates the foregoing paragraphs as if fully set forth in Count Two.

60.     The United States and Relator Glass seek relief against Defendants under the False Claims Act, 31 U.S.C. § 3729(a)(1)(B).

61.     Defendants the Hughes Center and UHS submitted false claims for payment to CMS.

62.     Defendants the Hughes Center and UHS created false records material to the false claims to Medicare and Medicaid. These false records include, but are not limited to, false CMS-1500 and 837P forms, and false billing records.

12

63.     These false records were material to the false claims submitted by Defendants the Hughes Center and UHS to Medicaid for payment as to the above-mentioned patients from at least 2010 to present.

64.     These records were false when made, and Defendants the Hughes Center and UHS knew that they were false when made.

65.     By reason of the false or fraudulent claims, the United States has sustained damages in a substantial amount to be determined at trial, and is entitled to treble damages plus civil penalties for each violation.

**Count III:**
**Violations of Virginia Fraud Against Taxpayers Act;**
**False or Fraudulent Claims**
**(Va. Code Ann. § 8.01-216.3(A)(1))**
**(Against All Defendants)**

66.     Relator incorporates the foregoing paragraphs as if fully set forth in Count III.

67.     The Commonwealth of Virginia and Relator Thomas Glass seek relief against Defendants under the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.3(A)(1).

68.     Defendants the Hughes Center and UHS knowingly submitted, or caused to be presented, false claims to Virginia Medicaid.

69.     Defendants the Hughes Center and UHS submitted false claims for payment to CMS. These false claims for payment include, but are not limited to, the false coding and billing information in the CMS-1500 forms and/or electronic 837P forms submitted to Medicaid from 2010 to present.

70.     Defendants the Hughes Center and UHS knew that the claims were false when made in that they had actual knowledge that the claims were false, remained deliberately ignorant as to the falsity of the claims, or recklessly disregarded the falsity in the claims.

13

71.     As a result of this conduct, Defendants caused the Commonwealth to suffer actual damages in an amount to be determined at trial.

**Count IV:**
**Violations of Virginia Fraud Against Taxpayers Act;**
**False Records or Statements**
**(Va. Code Ann. § 8.01-216.3(A)(2))**
**(Against All Defendants)**

72.     Relator incorporates the foregoing paragraphs as if fully set forth in Count IV.

73.     The Commonwealth of Virginia and Relator Thomas Glass seek relief against Defendants under the Virginia Fraud Against Taxpayers Act, Va. Code Ann. § 8.01-216.3(A)(2).

74.     Defendants the Hughes Center and UHS knowingly made, used, or caused to be made or used, false records or statements in connection with false claims to Virginia Medicaid. These false records included, but were not limited to, falsified treatment records pertaining to patients/residents for whom The Hughes Center collected Medicaid reimbusements.

75.     As a result of this conduct, Defendants caused the Commonwealth to suffer actual damages in an amount to be determined at trial.

### XIII.   Prayer for Relief

WHEREFORE, Relator, on behalf of the United States and the Commonwealth of Virginia, prays that judgment be entered in his favor and against Defendants as follows:

1.     That Defendants pay the United States and Commonwealth of Virginia triple the amount of its damages to be determined, plus the appropriate civil penalties for each false claim, statement, or record;

2.     That the Relator be awarded all reasonable attorneys' fees and costs, pursuant to 31 U.S.C. § 3730(d)(1), 31 U.S.C. § 3730(d)(2), and Va. Code Ann. 8.01-216.7;

14

3.     That in the event that the United States and/or Commonwealth of Virginia proceeds with this action, the Relator, for bringing this action, be awarded an amount of at least fifteen percent but not more than twenty five percent of the proceeds of any award or the settlement of the claims;

4.     That in the event that the United States and/or Commonwealth of Virginia does not proceed with this action, the Relator be awarded an amount that the Court decides is reasonable for collecting the civil penalty and damages, which shall not be less than twenty five percent nor more than thirty percent of the proceeds of any award or settlement;

5.     That the Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d) and Va. Code Ann. 8.01-216.7;

6.     That the Relator be awarded pre-judgment and post-judgment interest; and

7.     The Court award such other and further relief as is just, equitable, and proper.

**Relator requests a jury on all issues so triable.**

June 21, 2018

Respectfully submitted,

THOMAS GLASS

By: _____

Counsel for the Relator

John R. Thomas, Jr. (VSB No. 75510)
GENTRY LOCKE
900 SunTrust Plaza
P.O. Box 40013
Roanoke, Virginia 24022-0013
(540) 983-9300
Fax: (540) 983-9400
jthomas@gentrylocke.com
*Counsel for the Relator*

15

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America, and Commonwealth of Virginia, ex rel. Thomas Glass | Hughes Center, LLC and Universal Health Services, Inc. |

| **(b)** County of Residence of First Listed Plaintiff _____ <br> *(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant    Pittsylvania <br> *(IN U.S. PLAINTIFF CASES ONLY)* <br> NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF <br>          THE TRACT OF LAND INVOLVED. |

| **(c)** Attorneys *(Firm Name, Address, and Telephone Number)* <br> John R. Thomas, Jr., Esq. <br> Gentry Locke, P.O. Box 40013, Roanoke, VA 24022 <br> (540) 983-9300 | Attorneys *(If Known)* |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1  U.S. Government
      Plaintiff

☐ 2  U.S. Government
      Defendant

☐ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place <br> of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place <br> of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a <br> Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment <br>     & Enforcement of Judgment <br> ☐ 151 Medicare Act <br> ☐ 152 Recovery of Defaulted <br>     Student Loans <br>     (Excludes Veterans) <br> ☐ 153 Recovery of Overpayment <br>     of Veteran's Benefits <br> ☐ 160 Stockholders' Suits <br> ☐ 190 Other Contract <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | **PERSONAL INJURY** <br> ☐ 310 Airplane <br> ☐ 315 Airplane Product <br>     Liability <br> ☐ 320 Assault, Libel & <br>     Slander <br> ☐ 330 Federal Employers' <br>     Liability <br> ☐ 340 Marine <br> ☐ 345 Marine Product <br>     Liability <br> ☐ 350 Motor Vehicle <br> ☐ 355 Motor Vehicle <br>     Product Liability <br> ☐ 360 Other Personal <br>     Injury <br> ☐ 362 Personal Injury - <br>     Medical Malpractice | **PERSONAL INJURY** <br> ☐ 365 Personal Injury - <br>     Product Liability <br> ☐ 367 Health Care/ <br>     Pharmaceutical <br>     Personal Injury <br>     Product Liability <br> ☐ 368 Asbestos Personal <br>     Injury Product <br>     Liability <br> **PERSONAL PROPERTY** <br> ☐ 370 Other Fraud <br> ☐ 371 Truth in Lending <br> ☐ 380 Other Personal <br>     Property Damage <br> ☐ 385 Property Damage <br>     Product Liability | ☐ 625 Drug Related Seizure <br>     of Property 21 USC 881 <br> ☐ 690 Other | ☐ 422 Appeal 28 USC 158 <br> ☐ 423 Withdrawal <br>     28 USC 157 <br> **PROPERTY RIGHTS** <br> ☐ 820 Copyrights <br> ☐ 830 Patent <br> ☐ 835 Patent - Abbreviated <br>     New Drug Application <br> ☐ 840 Trademark | ☐ 375 False Claims Act <br> ☐ 376 Qui Tam (31 USC <br>     3729(a)) <br> ☐ 400 State Reapportionment <br> ☐ 410 Antitrust <br> ☐ 430 Banks and Banking <br> ☐ 450 Commerce <br> ☐ 460 Deportation <br> ☐ 470 Racketeer Influenced and <br>     Corrupt Organizations <br> ☐ 480 Consumer Credit <br> ☐ 490 Cable/Sat TV <br> ☐ 850 Securities/Commodities/ <br>     Exchange <br> ☐ 890 Other Statutory Actions <br> ☐ 891 Agricultural Acts <br> ☐ 893 Environmental Matters <br> ☐ 895 Freedom of Information <br>     Act <br> ☐ 896 Arbitration |
| **REAL PROPERTY** <br> ☐ 210 Land Condemnation <br> ☐ 220 Foreclosure <br> ☐ 230 Rent Lease & Ejectment <br> ☐ 240 Torts to Land <br> ☐ 245 Tort Product Liability <br> ☐ 290 All Other Real Property | **CIVIL RIGHTS** <br> ☐ 440 Other Civil Rights <br> ☐ 441 Voting <br> ☐ 442 Employment <br> ☐ 443 Housing/ <br>     Accommodations <br> ☐ 445 Amer. w/Disabilities - <br>     Employment <br> ☐ 446 Amer. w/Disabilities - <br>     Other <br> ☐ 448 Education | **PRISONER PETITIONS** <br> **Habeas Corpus:** <br> ☐ 463 Alien Detainee <br> ☐ 510 Motions to Vacate <br>     Sentence <br> ☐ 530 General <br> ☐ 535 Death Penalty <br> **Other:** <br> ☐ 540 Mandamus & Other <br> ☐ 550 Civil Rights <br> ☐ 555 Prison Condition <br> ☐ 560 Civil Detainee - <br>     Conditions of <br>     Confinement | **LABOR** <br> ☐ 710 Fair Labor Standards <br>     Act <br> ☐ 720 Labor/Management <br>     Relations <br> ☐ 740 Railway Labor Act <br> ☐ 751 Family and Medical <br>     Leave Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Employee Retirement <br>     Income Security Act <br> **IMMIGRATION** <br> ☐ 462 Naturalization Application <br> ☐ 465 Other Immigration <br>     Actions | **SOCIAL SECURITY** <br> ☐ 861 HIA (1395ff) <br> ☐ 862 Black Lung (923) <br> ☐ 863 DIWC/DIWW (405(g)) <br> ☐ 864 SSID Title XVI <br> ☐ 865 RSI (405(g)) <br> **FEDERAL TAX SUITS** <br> ☐ 870 Taxes (U.S. Plaintiff <br>     or Defendant) <br> ☐ 871 IRS—Third Party <br>     26 USC 7609 | ☐ 899 Administrative Procedure <br>     Act/Review or Appeal of <br>     Agency Decision <br> ☐ 950 Constitutionality of <br>     State Statutes |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
    Proceeding

☐ 2 Removed from
    State Court

☐ 3 Remanded from
    Appellate Court

☐ 4 Reinstated or
    Reopened

☐ 5 Transferred from
    Another District
    *(specify)*

☐ 6 Multidistrict
    Litigation -
    Transfer

☐ 8 Multidistrict
    Litigation -
    Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S.C. Sections 3729-33

Brief description of cause:
False Claims Act

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
    UNDER RULE 23, F.R.Cv.P.

DEMAND $   TBD

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE   21 June 2018     SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____



**GENTRY LOCKE**
*Attorneys*

**John R. Thomas, Jr.**
jthomas@gentrylocke.com
P: (540) 983-9370
F: (540) 983-9400

CLERKS OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

**JUN 25 2018**

JULIA C. DUDLEY, CLERK
BY: s/ MARTHA L. HUPP
DEPUTY CLERK

June 21, 2018

Julia C. Dudley, Clerk
United States District Court
Western District of Virginia
Danville Division
P.O. Box 1400
Danville, VA  24543

> Re:   United States of America, and Commonwealth of Virginia, ex rel. Thomas Glass
>         v.
>         Hughes Center, LLC and Universal Health Services, Inc.  /4:18CV00037

Dear Ms. Dudley:

We represent the plaintiff in the above-captioned matter.  Enclosed please find the following:

>     Complaint (original and four copies)
>     Civil Cover Sheet
>     Filing fee - $400.00

We are also enclosing a self-addressed stamped envelope so that you may return the four stamped copies of the Complaint and the receipt to our office.

Please contact us should you have any questions.  Thank you for your assistance.

Very truly yours,

GENTRY LOCKE

John R. Thomas, Jr.

JRT:fv
Enclosures